UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CRAIG ROTH,

Docket No.:

                                Plaintiff,

        -against-

COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, CHRISTOPHER TODD, individually and
in his official capacity, LT. CARSTEN, individually and in
his official capacity, SGT. DIBLASO, individually and in
her official capacity, SGT. WILDEMAN, individually and
in his official capacity, and NASSAU COUNTY POLICE
DEPARTMENT JOHN DOES #1-10 (fictitiously named),
individually and in their official capacities,

                             Defendants.
-----------------------------------------------------------------------X

**COMPLAINT**

**Plaintiff Demands a
Trial by Jury**

Plaintiff, CRAIG ROTH (hereinafter, "ROTH" or "Plaintiff"), by and through his attorneys, THE RUSSELL FRIEDMAN LAW GROUP, LLP, complaining of Defendants, COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPARTMENT, CHRISTOPHER TODD, LT. CARSTEN, SGT. DIBLASO, SGT. WILDEMAN, and NASSAU COUNTY POLICE DEPARTMENT JOHN DOES #1-10 (fictitiously named), individually and in their official capacities (hereinafter, collectively "Defendants"), respectfully alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.    This is an action arising under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA"), 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments of the United States Constitution  seeking to redress employment discrimination against Plaintiff in his employment by Defendants on the basis of Plaintiff's disability, for aiding, abetting, inciting, compelling, and/or coercing discriminatory and retaliatory acts forbidden by the ADA, and for

1

retaliation taken against Plaintiff after voicing complaints about said discrimination by Defendants.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is proper under 42 U.S.C. § 12101, 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) on the basis that it is the judicial district in the State in which the unlawful employment practices are alleged to have been committed; it is the judicial district in which the employment records relevant to such practice are maintained and administered; and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred therein.

## PARTIES

4.      At all times relevant, Plaintiff CRAIG ROTH was and is a citizen of the United States who resided in Nassau County, State of New York, and currently resides in Indian River County, State of Florida.

5.      At all relevant times described herein, Defendant COUNTY OF NASSAU ("County") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

6.      At all times relevant, Defendant NASSAU COUNTY POLICE DEPARTMENT ("NCPD") is a subdivision and/or agency of COUNTY and has an office at 1490 Franklin Avenue, Mineola, New York 11501.

7.      At all times relevant, upon information and belief, Defendant CHRISTOPHER TODD ("TODD") was and is an employee of Defendant NCPD with the title of Deputy Bureau Chief and is being sued in his individual and official capacity.

8.     At all times relevant, upon information and belief, Defendant LT. CARSTEN ("CARSTEN") was and is an employee of Defendant NCPD with the title of Lieutenant and is being sued in her individual and official capacity.

9.     At all times relevant, upon information and belief, Defendant SGT. DIBLASO ("DIBLASO") was and is an employee of Defendant NCPD with the title of Sergeant and is being sued in his individual and official capacity.

10.    At all times relevant, upon information and belief, Defendant SGT. WILDEMAN ("WILDEMAN") was and is an employee of Defendant NCPD with the title of Sergeant and is being sued in his individual and official capacity.

11.    At all times relevant, upon information and belief, Defendant NASSAU COUNTY POLICE DEPARTMENT JOHN DOES #1-10 (fictitiously named) ("PO DOES") were and are employees of Defendant NCPD and are being sued in their individual and official capacities.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

12.    Plaintiff timely filed a charge of employment discrimination against Defendants with the U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") on December 15, 2021; EEOC Charge No. 520-2022-02381.

13.    Plaintiff received a Notice of Right to Sue from the EEOC, dated August 11, 2022, concerning the charges of discrimination herein.  A copy of the Notice is annexed hereto as **Exhibit "A"**.

14.    Plaintiff's Complaint is filed within ninety (90) days of receipt of said Notice of Right to Sue.

## STATEMENT OF FACTS

15.     Plaintiff is a 30-year-old male.

16.     Plaintiff has been employed in law enforcement since eighteen (18) years of age.

17.     Specifically, Plaintiff worked for six (6) different law enforcement agencies prior to attending NCPD's Police Academy, including the Long Beach Police Department, the New York State Park Police, Nassau Community College Public Safety, Nassau County Auxiliary Police, the New York City Police Department (five [5] years) ("NYPD"), and the University of Connecticut Police Department.  Plaintiff also spent eighteen (18) months as part of a specialized counter-terrorism unit, the Critical Response Command.  Plaintiff is currently employed as a Police Officer with the City of Sebastian Police Department in Sebastian, Florida.

18.     In December 2020, Plaintiff transferred to NCPD from the NYPD.

19.     On December 11, 2020, Plaintiff began training in the NCPD's Nassau County Police Academy.

20.     On December 24, 2020, Plaintiff began experiencing pain in his shins and tightness in his hips, enough that he consulted with a doctor who sent him for an MRI and X-ray.

21.     On January 12, 2021, Plaintiff was diagnosed with Mataphyseal Dysplasia, Schmid Type, a very rare condition resulting in abnormal bone growth and skeleton structure.  Notably, Plaintiff never had any previous indication of any physical defect.

22.     Plaintiff's doctor instructed Plaintiff to run less than three (3) miles a day and to take a single day of rest following every day he ran in order to avoid any negative long-lasting physical consequences.

23.     In the past, Defendants have accommodated other similarly situated employees by, for example, allowing them to run inside on a treadmill.  Upon information and belief, an

individual in Plaintiff's own academy class was diagnosed with asthma, and Defendants accommodated him by allowing him to step out of line during runs to use his inhaler.

24.    On January 19, 2021, Plaintiff handed in his ADA paperwork, specifically his request for an accommodation.  Plaintiff's primary requests were (1) to not run 3-miles daily and (2) to be allowed to do the 1.5-mile timed run in the same amount of time allotted for the women, that being 13:29, so that he could avoid potential injury.  Plaintiff was willing to engage in the interactive process prescribed by the ADA and explicitly offered to substitute running with other forms of cardiovascular activity.

25.    The same day, Plaintiff was called into DIBLASO's office who said, in sum and substance: "Oh, we'll look into the accommodations.  Whatever the accommodations are, we'll have to do them for the whole class, because it wouldn't be fair."  Plaintiff was upset, and felt Sergeant DIBLASO was casually threatening him with being publicly outed and shamed for being disabled.

26.    The same week, CARSTEN condescendingly handed Plaintiff an NCPD EEOC ADA request packet.  She told Plaintiff, in sum and substance: "These are the essential functions of the job that you knew about prior to applying for the job and coming into the academy."  Plaintiff was taken aback by Lieutenant CARSTEN's animosity and sheer disdain.

27.    While his request for accommodation was evaluated, Plaintiff was not allowed to participate in physical academy training.

28.    In early February 2021, Plaintiff was again questioned by CARSTEN.

29.    In late February 2022, Plaintiff received an e-mail from TODD, the NCPD EEOC representative, denying the accommodations.  When Plaintiff inquired and complained that the decision was ambiguous and evasive, TODD was unhelpful.  Plaintiff explained that there was no

one that he could go to in order to complain or address the issue, and explicitly mentioned to TODD that there had been no informal interactive process. TODD was again evasive. Regardless, NCPD was more than capable of providing a reasonable accommodation under N.Y. Comp. Codes R. & Regs. Tit. 9 § 6000.8(a)(3). In fact, NCPD was arbitrarily prescribing passing times for the 1.5-mile run that are not cited in the foregoing statute.

30.     More than anything, Plaintiff was just confused now. He wasn't asking for much, the only accommodation he needed was for running. Even more so, the times required were already being decided by sex and age. How do the physical requirements of a police officer change according to what age you are and whether you're a man or a woman? They don't, so how could the stipulated times be anything but arbitrary and, if they were arbitrary, why was his request an issue? He had offered to, and could, comfortably do the run in the same time allotted for the women. The department was saying that a woman who can run the mile in that time is qualified to be a police officer, but a disabled person who does it in the same time is unqualified.

31.     Shortly afterwards, Plaintiff was sequestered with those on light duty while healthy recruits participated in physical exercises. WILDEMAN interrupted and had Plaintiff and his classmates sit down. He then started to lecture them on their apparent lack of commitment, telling them, in sum and substance, "You guys aren't going to get any special treatment." Then he looked at one of the women present and said: "I know your medical condition's legitimate, but the rest of you are faking it." People were obviously stunned, but this was their superior gaslighting them and telling them that they were either cry-baby's or cowards for being physically injured.

32.     In or around early February, Plaintiff was scheduled to have a medical appointment, but the surgeon with whom he was supposed to meet never showed. The following day, Plaintiff was told to find CARSTEN. When he did, CARSTEN started screaming at Plaintiff and berating

him for intentionally missing the appointment.  She started screaming about all of his personal confidential medical information, none of which she was supposed to know, and in full view and earshot of his colleagues and peers.  She then asked Plaintiff to write a letter stating he purposefully missed the appointment, which Plaintiff refused to do, as he hadn't purposefully missed the appointment.  CARSTEN persisted and had Plaintiff re-write the letter multiple times after reviewing various drafts, each time telling Plaintiff to write a version admitting he was at fault, to which Plaintiff responded by repeatedly writing letters stating his side of the disagreement.

33.     At this point, Plaintiff realized the type of people that he was dealing with: scornful, contemptuous, unsympathetic, and vengeful.  Plaintiff was now a ten (10) year veteran of law enforcement agencies who was merely looking to avoid long term injury and substantial pain and suffering, but the NCPD was so offended and felt so slighted by Plaintiff's mere requests that his superiors were simply going to look the other way and get rid of him.

34.     In or around late February, Plaintiff continued to feel isolated and abused by CARSTEN and NCPD.  For example, CARSTEN pulled Plaintiff out of class to yell at him, held his whole class late to embarrass him, and then proceeded to yell at him in front of other officers. Plaintiff knew there was no surviving the animus his request had created, so Plaintiff resigned on February 19, 2021.

35.     Upon information and belief, Defendants' constructive termination of Plaintiff was motivated by unlawful discrimination based on disability, and because of Plaintiff's filing of a protected complaint.

36.     Further, Defendants' actions were willful and/or malicious.

37.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered and continues to suffer loss of income, loss of future income

and benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress, pain and suffering, mental anguish, and other non-pecuniary losses.

## AS AND FOR A FIRST CAUSE OF ACTION
*Discrimination in Violation of the*
*Americans with Disabilities Act*

38.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

39.     Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336 (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

40.     Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

41.     As a result of result of Defendants' actions, Plaintiff has suffered and continues to suffer loss of income, loss of future income and benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress, pain and suffering, mental anguish, and other non-pecuniary losses, caused to incur attorney's fees, associated legal expenses, and other special damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees and punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### *Retaliation in Violation of the*
### *Americans with Disabilities Act*

42.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

43.     The ADA prohibits retaliation, interference, coercion, or intimidation against an employee who engages in protected activity.

44.     42 U.S.C. § 12203 provides:

Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

45.     As a result of Defendants' actions, Plaintiff has suffered and continues to suffer loss of income, loss of future income and benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress, pain and suffering, mental anguish, and other non-pecuniary losses, caused to incur attorney's fees, associated legal expenses, and other special damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees and punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### *Equal Protection 42 U.S.C. § 1983*

46.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

47.    That at all times herein mentioned, Defendants, in their capacities as municipal officials, were acting under the color of State Law.

48.    Upon information and belief, Plaintiff was treated differently than non-disabled individuals.

49.    Defendants denied Plaintiff's accommodation solely or in part based on Plaintiff's disability.

50.    Defendants harassed Plaintiff solely or in part based on Plaintiff's disability.

51.    Defendants constructively terminated Plaintiff solely or in part based on Plaintiff's disability.

52.    All of the actions by Defendants in regard to Plaintiff were performed with malice.

53.    Defendants acted with discriminatory purpose.

54.    As a proximate result of Defendants' intentional and malicious actions, Plaintiff has suffered and continues to suffer loss of income, loss of future income and benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress, pain and suffering, mental anguish, and other non-pecuniary losses, caused to incur attorney's fees, associated legal expenses, and other special damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees and punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### *Monell 42 U.S.C. § 1983*

55.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

56.     That Defendant COUNTY is a "person" within the meaning of 42 U.S.C. § 1983.

57.     That at all times material to this complaint, Defendant COUNTY, acting through its police department NCPD, had in effect de facto policies, practices, customs, and usages that were a direct and proximate cause of the unconstitutional conduct of the Individual Defendants.

58.     That Defendant COUNTY is well aware of the foregoing facts and has received innumerable complaints of disability discrimination, but Defendant COUNTY has condoned such conduct, and has failed to take sufficiently reasonable actions to investigate and institute polices to prevent or deter NCPD from discriminating against disabled individuals.

59.     Defendants, by their aforementioned acts, negligently failed to use due care in the performance of their duties in that they, among other negligent acts:

a.      Failed to perform their duties as reasonably prudent and careful supervisors would have done under similar circumstances, including (but not limited to) conducting an improper and unlawful discrimination; and other acts which an employer of ordinary prudence would have done;

b.      Hired and retained incompetent and unfit police officers and sergeants, whom they knew, or should have known, possessed dangerous propensities and a lack of proper temperament and whom they knew, or should have known, harbored hostility toward persons who were disabled or asserted their legal rights;

c.       Failed to exercise care in instructing police officers, officials, supervisors, and civilian employees as to their deportment, behavior, and conduct, including (but not limited to) failing to give proper instructions as to how to properly accommodate a disabled person; and

d.       Failed to establish meaningful procedures for disciplining officers and other personnel who have engaged in such acts of misconduct.

60.     That Defendant COUNTY has condoned unlawful discrimination by its employees and has failed to implement policies and adequately train its police officers with respect to the proper constitutional standard for accommodating a disabled individual.

61.     All the aforementioned acts were without any fault on the part of Plaintiff and Plaintiff has been damaged as a result of such conduct.

62.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff has suffered and continues to suffer loss of income, loss of future income and benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress, pain and suffering, mental anguish, and other non-pecuniary losses, caused to incur attorney's fees, associated legal expenses, and other special damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Craig Roth respectfully requests judgment against Defendants as follows:

A.       Under the First Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

B.      Under the Second Cause of Action, in the amount of ONE MILLION DOLLARS

($1,000,000.00) plus punitive damages and attorney's fees;

C.      Under the Third Cause of Action in the amount of ONE MILLION DOLLARS

($1,000,000.00) plus punitive damages and attorney's fees;

D.      Under the Fourth Cause of Action in the amount of ONE MILLION DOLLARS

($1,000,000.00) plus attorney's fees;

E.      For compensatory damages (including but not limited to back pay, front pay, and

emotional distress damages) in an amount to be determined at trial but in no event

less than ONE MILLION DOLLARS ($1,000,000.00);

F.      For all pre-judgment interest and post-judgment interest available under law;

G.      For the costs and disbursements of the within action; and

H.      Such other and further relief as the Court deems necessary, just, and proper.

Dated: Garden City, New York
       October 4, 2022

                        Respectfully Submitted,
                        **THE RUSSELL FRIEDMAN LAW GROUP, LLP**
                        *Attorneys for Plaintiff, Craig Roth*

            By:    /s/*Steven R. Filosa*
                        Steven R. Filosa, Esq.
                        400 Garden City Plaza, Suite 500
                        Garden City, New York 11530
                        Tel: 516.355.9696
                        Email: sfilosa@rfriedmanlaw.com

13

Exhibit A

**U.S. Department of Justice**

Civil Rights Division

*Disability Rights Section – 4 Con*
*950 Pennsylvania Ave, NW*
*Washington, DC  20530*

August 11, 2022

**VIA EMAIL**: sfilosa@rfriedmanlaw.com

Craig Roth c/o
Steve Filosa, ESQ
The Russell Friedman Law Group, LLP
400 Garden City Plaza, Suite 500
Garden City, NY  11530

Re:    EEOC Charge Against:        Nassau County Police Department
       EEOC No.:                  520-2022-02377

Dear Mr. Roth:

**NOTICE OF RIGHT TO SUE WITHIN 90 DAYS**

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge, and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you or your attorney has specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq.  If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.  This should not be taken to mean that the Department has made a judgment as to whether or not your charge is meritorious.

If you or your attorney has any questions concerning this matter or wish to inspect the investigative file, please address your inquiry to: New York District Office, U.S. Equal Employment Opportunity Commission.  Please note, due to COVID-19 there may be a delay in obtaining copies of the case file.

Enclosed you will find a Notice of Rights under the ADA Amendments Act of 2008 (ADAAA). We are forwarding a copy of this Notice of Right to Sue to the Respondent in this case.

Sincerely,
Kristen Clarke
Assistant Attorney General
Civil Rights Division

BY: *Celeste A. Adams-Simmons*
Celeste A. Adams-Simmons
Senior Investigator
Disability Rights Section

Enclosures:
Notice of Rights under the ADAAA

cc:   Nassau County Police Department
EEOC- New York District Office

2

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. .A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

➤ **Only one** major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.